IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


**GAEL L. WEBB**,

    Plaintiff,

v.

**MICHAEL J. ASTRUE, Commissioner of
Social Security**,

    Defendant.

No. 3:11-cv-06057-MO

OPINION AND ORDER

    **MOSMAN, J.**,

Gael Webb challenges the Commissioner's decision denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction under 42 U.S.C. § 405(g). I now affirm the Commissioner's decision.

### PROCEDURAL BACKGROUND

In March of 2006, Ms. Webb filed for DIB under Title II and SSI under Title XVI of the Social Security Act, alleging disability beginning on December 9, 2003. AR 57, 113, 117. The application was denied initially on June 23, 2006, and upon reconsideration on December 7, 2006. *Id* at 57. An administrative law judge ("ALJ") held a hearing on June 10, 2009, via video conference. *Id.* On July 1, 2009, the ALJ issued his decision denying Ms. Webb's application.

1 – OPINION AND ORDER

*Id*. at 68.  The Appeals Council denied review on February 4, 2011, making the ALJ's decision the final decision of the Commissioner.  *Id*. at 1.  Ms. Webb appealed on February 18, 2011.

## THE ALJ'S FINDINGS

The ALJ made his decision based upon the five-step sequential process established by the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 140–41 (1987); 20 C.F.R. §§ 404.1520, 416.920(a).  At step one, the ALJ found Ms. Webb had not engaged in substantial gainful activity since her December 9, 2003, alleged onset date.  AR 59.  At step two, the ALJ found Ms. Webb has the following severe impairments: obesity, math disorder, disorder of written expression, and bilateral hip bursitis.  *Id*.  Continuing to step three, the ALJ found that the impairments and combination of impairments do not meet or exceed a disorder listed in the Commissioner's regulations.  *Id*. at 61.

The ALJ next evaluated Ms. Webb's residual functional capacity ("RFC"), finding that she could "lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 2 hours in an 8 hour workday, sit 6 hours in an 8 hour workday, and push and/or pull within the weight limits given."  *Id.* at 62.  He also found that "she may perform occasional postural movements, but should not do such movements frequently or constantly."  *Id.*  Additionally, the ALJ found that Ms. Webb is "limited to simple tasks which do not require much reading or writing."  *Id.*  At step four, the ALJ relied on the testimony of a vocational expert ("VE") and found that, in light of her RFC, Ms. Webb is not capable of performing her past relevant work as a bartender, fast food worker, marker, hospital cleaner, kitchen helper, photo sorter, phone operator, and cashier.  *Id.* at 67.

The ALJ continued to step five, relying upon testimony from the VE to find that Ms. Webb could work as a patcher, sorter, or order clerk, and that these jobs existed in significant

numbers in the national economy.  *Id.* at 68.  Based on this step five finding, the ALJ concluded Ms. Webb was not disabled and denied her claim for benefits.  *Id.*

## STANDARD OF REVIEW

I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that the ALJ's findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).  The Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The reviewing court may not substitute its judgment for that of the Commissioner.  *Robbins*, 466 F.3d at 882.

## DISCUSSION

Ms. Webb argues the ALJ failed to adequately assess evidence in the record, which led to an inadequate RFC.  She also argues the ALJ improperly relied on VE testimony that conflicts with the Dictionary of Occupational Titles ("DOT").  Finally, she asserts that additional evidence she submitted to the Appeals Council warrants remand.

**I.      The ALJ's RFC**

Ms. Webb argues that the ALJ's RFC is incomplete because it does not include all of her functional limitations, including several limitations suggested by her treating physician. Specifically, Ms. Webb contends that the limitations in the ALJ's RFC did not properly account for her fatigue and weakness due to her medication, gastroenteritis, inability to sit for an

extended period of time, need for extra breaks, and environmental and positional limitations.  I will address each of these purported deficiencies in turn.

      A.   *Fatigue and Weakness from Medication Side Effects*

Ms. Webb argues the ALJ failed to consider the side effects of her medication in his RFC assessment.  (Pl.'s Br. [16] 5–6).  The specific side effects Ms. Webb alleges are fatigue and tiredness.  The basis of her allegation is the opinion of her treating physician, Dr. Loring Winthrop, who stated that Ms. Webb is "often quite fatigued/tired" due to "her many diagnoses, including diabetes, back pain, pain medication use, and headaches."  AR 407.  This evidence, however, does not suggest any specific functional limitations the ALJ could have or should have incorporated into the RFC.   Nor does it conflict with the RFC or the ALJ's analysis, which limited Ms. Webb to sedentary work.  AR 62.  I therefore reject this argument and see no error in the ALJ's analysis.  *See, e.g., Howard ex rel Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("[T]he ALJ is not required to discuss evidence that is neither significant nor probative.").

      B.   *Gastroenteritis*

Ms. Webb argues the ALJ failed to account for her limitations stemming from her gastroenteritis, which Dr. Winthrop found to be "mild."  (Pl.'s Br. [16] 5–6); AR 60.  Specifically, Ms. Webb asserts this condition gives her gastrointestinal problems every six months for one or two days.  The ALJ accepted that factual proposition.  *See* AR 60.  The ALJ did not, however, specifically add a limitation to Ms. Webb's RFC based on this sporadic problem.  Again, Ms. Webb has not explained how the fact that she has gastrointestinal problems for one or two days in a row, roughly two times a year, is in conflict with the RFC or might warrant any additional work-related limitation.  She does not provide any evidence, for example, that on the two to four days per year that she has gastrointestinal problems, she is unable to work

or unable to do any specific physical activity.  Accordingly, the ALJ did not err by not discussing this specific evidence.  *See, e.g., Howard,* 341 F.3d at 1012.

    C.  *Sitting Limitation*

Ms. Webb argues the ALJ improperly rejected her treating doctor's opinion regarding her sitting limitation and, therefore, the ALJ's RFC is incomplete. (Pl.'s Br. [16] 8–9). **"**Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).  If the treating doctor's testimony is "contradicted by another doctor" the ALJ can reject the testimony for "specific and legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If a treating doctor's opinion "is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons." *Id.*

Dr. Winthrop opined that Ms. Webb can sit for less than six hours a day. AR 66.  The ALJ gave significant weight to the majority of Dr. Winthrop's opinion. *Id.*  However, the ALJ rejected this portion of Dr. Winthrop's opinion because Ms. Webb testified that she watches six hours of television a day from a seated position, a fact which was corroborated by Ms. Webb's mother, Joetta Webb. *Id.* at 63, 66.  The ALJ's RFC provides that Ms. Webb can sit six hours in an eight hour workday. *Id.* at 62.

The ALJ's rejection of this portion of Dr. Winthrop's opinion was proper as Ms. Webb and her mother both contradicted the doctor's opinion.  That contradiction provides a clear and convincing reason for the ALJ's conclusion.  Plaintiff argues the ALJ's reasoning is flawed because she sits in a recliner when she watches television. (Pl.'s Br. [16] 9).  However, she does not dispute that she told the ALJ she could sit for six hours and I find that the ALJ's

interpretation of the testimonial evidence was rational. *See, e.g., Magallanes*, 881 F.2d at 750 (explaining that the Commissioner's decision must be upheld if it is a rational interpretation of the evidence, even if there are other possible rational interpretations). Moreover, plaintiff has not shown any prejudice even if the ALJ should have credited Dr. Winthrop on this point. Even with Dr. Winthrop's suggested limitation, Ms. Webb could apparently sit for any amount of time up to six hours, and Ms. Webb puts forth no evidence that the jobs the ALJ identified for Ms. Webb would be foreclosed if she could only sit for five and a half hours at a time, as opposed to six. *See McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) (explaining the claimant bears the burden of showing prejudice from an ALJ's error).

    D. *Need for Extra Breaks*

Ms. Webb argues the ALJ improperly rejected Dr. Winthrop's opinion regarding her need for additional breaks and, therefore, the ALJ's RFC assessment is incomplete. (Pl.'s Br. [16] 8–9). Dr. Winthrop checked a box indicating that Ms. Webb needs two five-minute breaks in an eight hour day that would be "in excess of normal breaks." AR 410. The ALJ did not mention this portion of Dr. Winthrop's opinion.

I conclude that, even assuming the ALJ should have discussed this point, the error is harmless. An ALJ may discredit a treating physician's opinion where, as here, the opinion is conclusory, brief, and unsupported by the record or by any objective medical findings. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Dr. Winthrop's "opinion" that Ms. Webb needs additional breaks was unsupported by clinical findings and plaintiff has pointed to no other evidence that these breaks are actually necessary. And there is no evidence that Dr. Winthrop had any knowledge of what breaks employees customarily receive in the jobs the ALJ

6 – OPINION AND ORDER

identified for Ms. Webb. Accordingly, the ALJ's failure to discuss this specific point was harmless.

### E. *Environmental and Postural Limitations*

Ms. Webb argues the ALJ improperly rejected Dr. Winthrop's opinion regarding environmental and postural limitations, and, therefore, the ALJ's RFC assessment is incomplete. (Pl.'s Br. [16] 9–10). Specifically, Dr. Winthrop checked boxes indicating Ms. Webb can rarely kneel, crawl or stoop, and should have limited exposure to temperature extremes, dust, and inhaled irritants. AR 411–12.

Again, plaintiff fails to explain any inconsistency with the RFC and this evidence. Nor does she explain how inclusion of limitations based on this evidence would have changed the ALJ's ultimate findings. The RFC specifies that Ms. Webb is limited to only "occasional postural movements," *id*. at 62, which adequately accounts for Dr. Winthrop's opinion on kneeling, crawling, and stooping. As to the environmental limitations, the terms Dr. Winthrop used are so vague they do not lend themselves to any specific functional limitations. Nor is there any indication that the jobs the ALJ found Ms. Webb capable of performing involve anything more than limited exposure to temperature extremes, dust, and inhaled irritants. Accordingly, any error in not specifically discussing the checked boxes on that point is harmless. *See McLeod*, 640 F.3d at 887.

## II. Vocational Expert Testimony

Ms. Webb argues the VE's testimony conflicted with the DOT, and that the ALJ did not discharge his duty to determine whether the VE's testimony conflicts with the DOT and explain away any conflict. Specifically, Ms. Webb alleges a conflict with the DOT because the VE's

7 – OPINION AND ORDER

testimony is based on a hypothetical individual who can read and spell at specific grade levels, but the DOT does not classify jobs based on reading and spelling grade levels.

The ALJ's hypothetical question to the VE was for an individual who can read at the fifth grade level and spell at the third grade level. *See* AR 49. The DOT does not rank jobs by reading and spelling grade levels; however, the DOT does contain "Language Level" classifications. Two of the jobs that the VE testified someone with Ms. Webb's RFC could perform—patcher and sorter—are classified as Language Level 1. Language Level 1 is the lowest possible level and is defined as:

> <u>Reading</u>: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers.
> <u>Writing</u>: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses.
> <u>Speaking</u>: Speak simple sentences, using normal word order, and present and past tenses.

*Dictionary of Occupational Titles*, 4th Ed., App'x C, Components of the Definition Trailer (1991).

Plaintiff has not identified any conflict between Language Level 1 on the one hand, and fifth grade reading and third grade spelling abilities on the other. None is apparent and I therefore reject this argument since I find there to be no conflict between the DOT and the VE's testimony that Ms. Webb can work as a patcher or sorter.[1]

### III.  Additional Evidence from Dr. Cochran

Ms. Webb asserts I should review a report from examining psychologist Dr. John Cochran, issued two months after the ALJ issued his decision, and remand for further

---

[1] The third job the VE identified for Ms. Webb, order clerk, has a Language Level of 2 according to the DOT. However, I do not address whether the VE's testimony as to that job aligned with the DOT because there are significant numbers of the other two positions available and therefore any failure to explain away a conflict as to the order clerk position is harmless.

8 – OPINION AND ORDER

consideration of that evidence. (Pl.'s Br. [16] 13). The Commissioner contends I should not consider this evidence because Ms. Webb did not show good cause for her untimely submission, or the materiality of the new evidence. I have considered the additional evidence, which was reviewed by the Appeals Council. *See Harmon v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) (explaining that a court "properly may consider . . . additional materials [where] the Appeals Council addressed them in the context of denying Appellant's request for review"). However, I find that it does not warrant remand because it is not inconsistent with the ALJ's findings.

Ms. Webb asserts that Dr. Cochran's opinion contains functional limitations that should be part of the ALJ's RFC assessment. Specifically, she argues that a series of boxes Dr. Cochran checked in a form titled "Functional Assessment of Work-Related Mental Activities" shows Ms. Webb suffers from limitations not addressed in the RFC. *See* AR 427–28. Plaintiff points out that Dr. Cochran's checked boxes indicate Ms. Webb has "moderate" limitations on her capacity to maintain attention and concentration for extended periods of time, maintain regular attendance, sustain an ordinary routine without special supervision, and respond appropriately to changes in the work setting. (Pl.'s Br. [16] 13). Moreover, plaintiff argues, Dr. Cochran checked boxes indicating Ms. Webb has "moderately severe" limitations on her capacity to complete a normal workday without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions, and respond appropriately to criticism from supervisors. (*Id.* at 14).

The problem with plaintiff's argument is that plaintiff has not explained what the conflict is between the ALJ's RFC and Dr. Cochran's findings. By checking "moderately severe" boxes next to certain work-related tasks, Dr. Cochran only indicated it would *sometimes* be difficult for Ms. Webb to do certain things. For example, his "moderately severe" finding as to Ms. Webb's

ability to complete a workday without interruption from psychologically based symptoms translates to a finding that Ms. Webb can always complete a workday without interruption, but will sometimes have "noticeable difficulty" doing so.  AR 427 (defining "moderately severe").  That finding is not inconsistent with the RFC.  Moreover, it appears that Dr. Cochran believed Ms. Webb's most serious difficulties resulted from the fact that she would struggle to understand complicated instructions.  *See* AR 425 (opining that Ms. Webb "has the ability to understand and follow basic instructions" but "may struggle with tasks that require verbal expression and understanding of complex oral communications").  This analysis actually aligns with the RFC, which limited Ms. Webb to "simple tasks."  *Id*. at 62.  Thus, because plaintiff has not established any inconsistency between Dr. Cochran's 2009 findings and the ALJ's analysis, the additional evidence plaintiff submitted does not warrant a remand.

## CONCLUSION

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this   2nd    day of May, 2012.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court

10 – OPINION AND ORDER